UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BULLDOG, INC., ET AL.,**  *Plaintiffs* | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-6597** |
| **STARSTONE SPECIALTY INSURANCE COMPANY, ET AL.,**  *Defendants* | **SECTION: "E"(4)** |

## ORDER AND REASONS

Before the Court is a Motion to Remand[1] filed by Plaintiffs, The Bulldog, Inc.; Vessel NOLA, LLC; Beer Buds, LLC; Alan J. Weiner; and Emery E. Dyer, III. The motion is opposed by Defendant Amwins Insurance Brokerage[2] and Defendants Arthur J. Gallagher Risk Management Services, LLC ("AJG"); John P. O'Brien, and William Jackson.[3] For the reasons that follow, the motion is **GRANTED** and this case is remanded to Orleans Parish Civil District Court.

## BACKGROUND

This is an insurance dispute in the wake of Hurricane Ida, which struck the Louisiana coast on August 29, 2021.[4] Plaintiffs filed suit in state court on August 25, 2023.[5] Defendant Amwins Insurance Brokerage, LLC, removed the case to this Court on October 30, 2023,[6] arguing the non-diverse Defendants, O'Brien and Jackson, were improperly joined—specifically, that Plaintiffs have no viable cause of action against them, and that as a result, these defendants should be dismissed and the action should

---

[1] R. Doc. 17.
[2] R. Doc. 24.
[3] R. Doc. 23 (fully incorporating the arguments in their 12(b)(6) motion to dismiss, R. Doc. 22). The remaining Defendant, StarStone Specialty Insurance Company, does not join in opposition.
[4] R. Doc. 1-1 at p. 5.
[5] *See generally* R. Doc. 1-1.
[6] R. Doc. 1.

1

remain in this court.[7] "In determining the validity of an allegation of improper joinder, the district court must construe factual allegations [and] resolve contested factual issues . . . in the plaintiff's favor."[8]

## FACTS[9]

Together, Plaintiffs own and operate three bars and restaurants in New Orleans: the Bulldog Bar and Grill on Magazine Street, the Bulldog Bar and Grill Mid-City, and Vessel NOLA (the "properties").[10] Plaintiffs insured all three properties through a policy with Defendant StarStone Specialty Insurance Company.[11] That policy was in effect on August 29, 2021, when Hurricane Ida made landfall.[12] The properties were damaged by the hurricane, and Plaintiffs reported that damage to StarStone.[13] StarStone's handling of the claims was "unduly delayed," and as of the filing of the state court petition, in August 2023, StarStone "ha[d] not issued a single payment to Plaintiffs."[14]

StarStone offered various explanations for the non-payment. Most relevant here, "at one point" Starstone claimed the Plaintiffs were owed no money "because the Policy did not provide named storm coverage."[15] Eventually, Plaintiffs were "contacted by a [StarStone] representative," who told them the properties' policy "did not include named storm coverage."[16] "[C]onfused," Plaintiffs Dyer and Weiner called Defendant O'Brien, an insurance producer "in the Greater New Orleans area"[17] with whom they had a twenty-

---

[7] R. Doc. 1 at p. 5.
[8] *Rodrigue*, 2014 WL 4999465, at *2 (citing *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995)).
[9] The facts are taken from Plaintiffs' state court petition, R. Doc. 1-1.
[10] *Id.* at p. 4.
[11] *Id.*
[12] *Id.*
[13] *Id.* at p. 5.
[14] *Id.* at p. 7.
[15] *Id.*
[16] *Id.* at p. 11.
[17] *Id.* at p. 3.

2

year relationship.[18] Over time, O'Brien became "a trusted advisor, friend, and confidant to Plaintiffs."[19] "[A]round the same time every year," O'Brien would contact Dyer and Weiner "to conduct an overview of all potential insurance coverages that Dyer and Weiner may [have] want[ed] to obtain for their businesses and other related insurance topics."[20] O'Brien would then present quotes to Dyer and Weiner for comparison and discussion.[21] Dyer and Weiner "trusted O'Brien completely" to "obtain[] adequate insurance for all their businesses."[22] At all relevant times, O'Brien was associated with AJG, an insurance agency and brokerage.[23]

Importantly, "Plaintiffs had always maintained named storm coverage for all their businesses."[24] Indeed, in January 2021, O'Brien sent Dyer a document comparing the properties' prior coverage with that proposed for the upcoming year, and the proposed coverage for 2021 had a line item for named storm coverage for the full year.[25] O'Brien had never "mention[ed] . . . excluding named storm coverage" from the policy.[26] When contacted by Dyer and Wiener to discuss why named storm coverage was not included in that year's policy, O'Brien explained that, "without Plaintiffs['] knowledge, he had "procured a policy from [StarStone] that *excluded* named storm coverage" from February 1, 2021, to June 1, 2021, but the policy "was supposed to include named storm coverage for the remainder of the policy period," which would have included the date of Hurricane Ida.[27] O'Brien represented to Plaintiffs that StarStone *was* directed to add named storm

---

[18] *Id*. at p. 8. Plaintiffs also represent O'Brien is "a fairly well-known insurance producer in the New Orleans restaurant industry." R. Doc. 17-1 at p. 1.
[19] R. Doc. 1-1 at p. 3.
[20] *Id*. at p.8.
[21] *See* R. Doc. 1-1 at pp. 9–10.
[22] *Id*. at p. 8.
[23] *Id*. at pp. 3, 8.
[24] Id. at p. 11.
[25] *Id*. at pp. 8–9
[26] Id. at p. 9.
[27] *Id*. at p. 11 (emphasis added).

3

coverage and simply "overlooked the task."[28] O'Brien "profusely reassured Plaintiffs" that he would "handle it" and "straighten out the issue."[29] StarStone continued to adjust the claim, and later, "[O'Brien] reported to Plaintiffs that the named storm coverage issue 'was fixed'"[30]

In 2022, Dyer and Weiner obtained repair bids from contractors, discussing with O'Brien their progress and the status of the claim.[31] At some point, O'Brien tasked one of his colleagues with "cobbling all the information together and submitting a report" to StarStone. At the start of 2023, yet to receive payment from StarStone, Dyer and Weiner contacted O'Brien to express their concerns.[32] O'Brien responded that, if the claims were not resolved satisfactorily, Dyer and Weiner had until August 2023—two years after the date of the hurricane—to file suit against StarStone (presumably for breach of contract).[33] More time passed with no payment from StarStone.[34]

In July 2023—a month before this suit was filed—O'Brien and his area supervisor, William Jackson,[35] called Dyer and Weiner and reported that StarStone was willing to offer "only . . . $80,000 to settle the claim."[36] Moreover, O'Brien and Jackson "conveyed" that StarStone was "not asserting a lack of named storm coverage."[37] Dyer and Weiner "were unhappy with and disagreed with [StarStone's] evaluation of the loss,"[38] as they believed the damage to the properties could total a million dollars or more.[39] Nevertheless, Dyer and Weiner "still believed" O'Brien's and Jackson's representations

---

[28] *Id.* at p. 11.
[29] *Id.*
[30] *Id.* at p. 12.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.* at p. 12–13.
[35] *Id.* at pp. 3–4.
[36] Id.at p. 13.
[37] *Id.* at p. 13.
[38] *Id.* at p. 13 .
[39] *See* R. Doc. 1-1 at p. 13; R. Doc. 17-1 at pp. 5–6.

4

that there was named storm coverage, "whether by endorsement, reformation, or otherwise."[40]

As the two-year prescriptive period for filing suit against StarStone was coming to a close, Plaintiffs retained counsel.[41] Plaintiffs' counsel contacted Amwins (the wholesale broker) and AJG, the brokerage that employed O'Brien and Jackson, and asked that they "obtain some documentation" from StarStone to confirm that StarStone "was not asserting that named storm coverage was excluded from the Policy."[42] AJG and Amwins "refused to obtain any such documentation."[43] This refusal alerted Plaintiffs "to the possibility that they had been misled for many months into believing that" StarStone was indeed not asserting the exclusion of named storm coverage.[44]

Plaintiffs "moved forward with some repairs, including the complete replacement of the roofing systems at each" of the properties. This suit followed in state court; relevant to this motion, Plaintiffs sued O'Brien, Jackson, AJG, and Amwins for negligence, failure to procure, breaches of fiduciary duty, and fraud. [45] Amwins removed to this court with the consent of all Defendants.[46]

## DOES THIS COURT HAVE JURISDICTION?

Federal courts are courts of limited jurisdiction and possess only the authority conferred upon them by the U.S. Constitution or by Congress.[47] A civil action over which federal courts have original jurisdiction may be removed to federal court unless expressly prohibited by another statute.[48] The principles of comity and federalism mandate strict

---

[40] *Id.* at p. 13.
[41] *Id.* at p. 14.
[42] *Id.* at p,. 14
[43] *Id.* at p. 14.
[44] *Id.* at p. 14.
[45] *See* R. Doc. 1-1.
[46] *See* R. Doc. 1.
[47] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).
[48] 28 U.S.C. § 1441(a).

5

construction of removal statutes in order to minimize encroachment on the sovereignty of state courts.[49]

A common ground for removal is diversity jurisdiction, which is designed to provide out-of-state defendants a forum to litigate free of local prejudices.[50] When removal is based on federal diversity jurisdiction, 28 U.S.C. § 1332 requires the removing party to show that (1) complete diversity of citizenship exists between the parties, and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.[51] Jurisdiction is decided at the time of removal.[52] "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."[53] "In every case where a diverse defendant proves that the plaintiff's decision to join an in-state party is improper, the diverse defendant gains access to the federal courts. If, however, the foreign defendant fails to prove the joinder improper, then diversity is not complete, the diverse defendant is not entitled to remove, and remand is mandated."[54]

The citizenship of the parties is as follows.

**Plaintiffs:**

- **The Bulldog, Inc.**, is a Louisiana corporation with its principal place of business in Louisiana;

- **Beer Buds, LLC**, through the citizenship of its members, is a citizen of Nevada, Louisiana, and Mississippi;

- **Vessel NOLA, LLC**, through the citizenship of its members, is a citizen of Nevada, Louisiana, and Mississippi;

---

[49] *See Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).
[50] *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 716 n6 (5th Cir. 1975) ("The very purpose of federal diversity jurisdiction is to avoid bias against parties from outside the forum state.").
[51] *Garcia v. Koch Oil Co. of Tex., Inc.*, 351 F.3d 636, 638 (5th Cir. 2003) (citing *St. Paul Reinsurance Co. v. Greenburg*, 134 F.3d 1250, 1253 (5th Cir. 1998)).
[52] *Id. See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir. 2000) (recognizing that subsequent events, such as a reduction in the amount in controversy, will generally not divest jurisdiction).
[53] *See Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).
[54] *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568 (5th Cir. 2004).

- **Emery E. Dyer,** an individual, is a citizen of Nevada; and

- **Alan Weiner,** an individual, is a citizen of Nevada.

**Defendants:**

- **StarStone Specialty Insurance Company** is a Delaware corporation with its principal place of business in New Jersey;

- **Arthur J. Gallagher Risk Management Services, LLC**, is a is a citizen of Delaware and Illinois;

- **Amwins Insurance Brokerage, LLC**, is a citizen of Delaware and North Carolina;

- **John P. O'Brien**, an individual, is a citizen of Louisiana; and

- **William Jackson**, an individual, is a citizen of Louisiana.

As laid out above, the Bulldog, Inc.; Beer Buds, LLC; and Vessel NOLA, LLC have Louisiana citizenship, as do Defendants O'Brien and Jackson. Accordingly, if the citizenship of O'Brien and Jackson is considered, this Court does not have jurisdiction, as there is not complete diversity. If the citizenship of O'Brien and Jackson is *not* considered, then all remaining Defendants are diverse from Plaintiffs, and this Court maintains jurisdiction.

### MUST THE CITIZENSHIP OF THE NON-DIVERSE DEFENDANTS BE CONSIDERED EVEN THOUGH THEY WERE NOT SERVED?

In its notice of removal,[55] Amwins argues O'Brien's and Jackson's non-diverse citizenship should be disregarded as O'Brien and Jackson had not been properly served at the time of removal, and, as a result, their citizenship is "not considered for purposes

---

[55] R. Doc. 1.

7

of jurisdiction."[56] The Court rejects Amwins' contention that the citizenship of O'Brien and Jackson should not be considered.[57]

In support of its argument, Amwins cites 28 U.S.C. § 1446(b)(2)(A), which requires that at the time of removal, all "properly joined and served" defendants "must join in or consent to the removal." Plaintiffs are correct that this statute "says nothing about whose citizenship this Court should consider."[58]

If the statute's text were not enough, the Fifth Circuit has clarified that cases removed pursuant to diversity jurisdiction[59] require "complete diversity . . . among all *named* parties," that is, "[e]ach plaintiff must be diverse from each defendant."[60] It is no matter "if one or more defendants have not been served; *citizenship* is what counts."[61] A defendant's "non-diverse citizenship cannot be ignored simply because he was an unserved defendant."[62] Statutory text and Fifth Circuit case law compel this Court to reject Amwins' argument to the contrary. The status of service on O'Brien and Jackson is

---

[56] R. Doc. 1-1 at p. 5. Amwins may have been thinking of the "forum defendant rule" under 28 U.S.C. § 1441(b)(2). Under § 1441(b)(2), when removal is based solely on diversity jurisdiction, the action "may not be removed if any of the parties in interest properly joined *and served* as defendants is a citizen of the State in which such action is brought." Nothing in the forum defendant rule, however, affects the requirement under § 1332(a)(1) that a suit based solely on diversity jurisdiction must be between citizens of different states. The diversity provisions of 28 U.S.C. § 1332(a)(1) require *complete* diversity among the parties. Removal under § 1441(b)(2) is permissible only if complete diversity exists amongst all named parties. *In Re Levy*, 52 F.4th 244, 245 (5th Cir. 2022).
[57] Plaintiffs represent that Jackson "was served on October 3, 2023," prior to the Defendants' October 30, 2023 removal. R. Doc. 17-1 at p. 8. The Court is not aware of the date O'Brien was served, but regardless, as the Court will explain, this argument by Defendants is wrong as a matter of law.
[58] R. Doc. 17-1 at p. 8.
[59] *See* 28 U.S.C. § 1332(a).
[60] *In re Levy*, 52 F.4th 244, 246 (5th Cir.2022) (emphasis in original) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806).
[61] *In re Levy*, 52 F.4th 244, 247 (5th Cir.2022) (emphasis added).
[62] *In re Levy*, 52 F.4th 244, 248 (5th Cir.2022) (quoting *Deshotel*, 142 F.3d at 883).

8

irrelevant. The citizenship of the non-resident Defendants must be considered unless they were improperly joined.

## DO PLAINTIFFS HAVE A POSSIBILITY OF RECOVERY AGAINST THE NON-DIVERSE DEFENDANTS?

"The starting point for analyzing claims of improper joinder must be the statutes authorizing removal to federal court of cases filed in state court."[63] One of those statutes, 28 U.S.C. 1441(a), permits the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." As noted above, Section 1332 requires the removing party to show that (1) complete diversity of citizenship exists between the parties, and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs. In this case, Defendants argue there *is* complete diversity, despite some Plaintiffs and some Defendants sharing Louisiana citizenship, because O'Brien and Jackson have been improperly joined.[64] The federal courts developed the concept of "improper joinder" to prevent sham, illegitimate joinders of home-state defendants.[65]

The improper joinder inquiry asks "whether the defendant has demonstrated that there is *no possibility of recovery* by the plaintiff against an in-state defendant," or, put another way, whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[66] If this inquiry identifies such a defendant, a court may dismiss that improperly joined defendant from a removed state case and disregard that defendant's citizenship for purposes of diversity jurisdiction.[67]

---

[63] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc)
[64] *See* R. Docs. 1, 22, 24.
[65] *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968).
[66] Smallwood 572 (emphasis added) citing Travis v. Irby, 326 F.3d 644, 648 (5th Cir. 2003).
[67] *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (en banc).

9

"Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case."[68] In this light, the Fifth Circuit has recognized two ways for the removing party to establish improper joinder: (1) "actual fraud in the pleading of jurisdictional facts;" or, echoing the "no possibility of recovery" standard, (2) an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[69] There is no allegation of fraudulently pleaded jurisdictional facts in this case. "The test for improper joinder where there is no allegation of [fraudulently pleaded jurisdictional facts] is whether the defendant has demonstrated that there is *no possibility of recovery* by the plaintiff against an in-state defendant."[70]

While the standard for evaluating a claim of improper joinder is similar to the standard used when evaluating a Rule 12(b)(6) motion for failure to state a claim, the scope of the Court's inquiry is broader than it would be with a Rule 12(b)(6) motion. The Court will not "pre-try" the case, but the Court may, in its discretion, "pierce the pleadings" under certain circumstances and consider summary judgment type evidence to determine whether the plaintiff's claim has a factual basis.[71] Although post-removal filings may not be considered to support *new* causes of action not raised in the state court petition, they may be scrutinized "for purposes of determining whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the defendant's] liability on the pleaded claims."[72] A defendant's burden of persuasion on

---

[68] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir.2004)
[69] *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)).
[70] *Rodrigue v. Continental Ins. Co.*, No. 14-1797, 2014 WL 4999465, at *2 (E.D. La. Oct. 7, 2014) (emphasis added) (citing *Smallwood*, 385 F.3d at 573).
[71] *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003).
[72] *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999).

improper joinder is heavy.[73] As mentioned previously, "[i]n determining the validity of an allegation of improper joinder, the district court must construe factual allegations, resolve contested factual issues, and resolve ambiguities in the controlling state law in the plaintiff's favor."[74] "The district court must also take into account 'the status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non-diverse defendant."[75] If there has been discovery, and summary judgment type evidence is provided, "a removing party's claim of fraudulent joinder to destroy diversity is viewed as similar to a motion for summary judgment. . . . A court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties."[76]

It does not appear that the parties have engaged in extensive discovery in this case and only one item of possible summary judgment evidence was attached to any of the pleadings—the Plaintiffs attached marketing materials provided to them by O'Brien.[77] The Court does not have the summary judgment evidence that would be necessary for the Court to pierce the pleadings and consider the motion as being similar to a motion for summary judgment. Instead, the Court will consider the standard used when evaluating a Rule 12(b)(6) motion for failure to state a claim and construe factual allegations, resolve contested factual issues, and resolve ambiguities in controlling state law in favor of remand. Finally, the Court will take into account the opportunity the Plaintiffs have had to develop their claims against the non-diverse Defendants.

---

[73] *Travis*, 326 F.3d at 649.
[74] *Rodrigue v. Continental Ins. Co.*, No. 14-1797, 2014 WL 4999465, at *2 (citing *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995)).
[75] *Id.*
[76] *Smallwood v. Illinois R.R. Co.*, 385 F.3d 538, 542 (5th Cir. 2004).
[77] R. Doc. 26-1.

In this case, Amwins argues Plaintiffs have no possibility of recovery against the non-diverse Defendants, O'Brien and Jackson, because the duty they allegedly breached is not recognized under Louisiana law.[78] Amwins, AJG, O'Brien, and Jackson argue the claims are perempted.[79] The Court considers these arguments in light of Defendants' "heavy" burden to show that there is absolutely "no possibility of recovery" for Plaintiffs on their claims.[80]

### *Plaintiffs have a possibility of recovery against O'Brien and Jackson as they may be personally liable for obligations for which the LLC would otherwise be solely liable if they breached their professional duty (piercing the corporate veil).*

Plaintiffs bring claims of negligence, failure to procure insurance, breach of fiduciary duty, and fraud against AJG.[81] The Plaintiffs argue that even though O'Brien and Jackson are employees of AJG, an LLC, they may be held personally liable for obligations for which the LLC would otherwise be solely liable because they breached their professional duty.[82] The Plaintiffs rely on the Louisiana Supreme Court decision in *Ogea v. Merritt*,[83] in which Louisiana's highest court said that "in narrowly defined circumstances, when individual member(s) of a juridical entity such as an LLC mismanage the entity or otherwise thwart the public policies justifying treating the entity

---

[78] *See generally* R. Docs. 22, 23, 24. Amwins further argues in its Notice of Removal that O'Brien and Jackson have been improperly joined because "an employee discharging his or her employment-related duties cannot be held liable for alleged negligent acts, unless his or her acts caused bodily injury to the plaintiff." (R. Doc. 1 at p. 5.) Amwins relies on *Brookshire Brothers Holding, Inc. v. Total Containment, Inc.*, 2006 WL 1133858 (W.D. La. Apr. 26, 2006). The district court in that case referenced *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214 (5th Cir. 1986), in which the Fifth Circuit clarified that the case law establishing that an employee may be liable in tort for his personal negligence only if the negligence results in bodily injury applies *only* to bodily injury claims and does not apply to claims arising in a commercial setting. This case arises in a commercial setting and involves only economic injury. *See generally* R. Doc. 1-1.
[79] *See generally* R. Docs. 22, 23, 24.
[80] *Roy Supply*, 2016 WL 4362156, at *3 (citing *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 573–74 (5th Cir. 2004) (en banc)
[81] R. Doc. 1-1 at p. 17. Plaintiffs also bring these claims against other Defendants.
[82] *Id.*
[83] 2013-1085 (La. 12/10/13); 130 So. 3d 888.

as a separate juridical person, the individual member(s) have been subjected to personal liability for obligations for which the LLC would otherwise be solely liable."[84] "However," this occurs only "in narrowly defined circumstances," such as "when individual member(s)" of "an LLC mismanage the entity or otherwise thwart the public policies justifying treating the entity as a separate juridical person;" in those circumstances, "the individual member(s) have been subjected to personal liability for obligations for which the LLC would otherwise be solely liable. When individual member(s) are held liable under such circumstances, it is said that the court is 'piercing the corporate veil.'"[85]

The basis of the *Ogea* ruling is La. R.S.12:1320, entitled "Liability to third parties of members and managers," which provides, in pertinent part:

> B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.
>
> * * *
>
> D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, *employee*, or agent of a limited liability company because of any fraud practiced upon him, *because of any breach of professional duty or other negligent or wrongful act* by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.
>
> (emphasis added.)

While the general rule is that no member, manager, employee, or agent of an LLC is liable in such capacity for a debt or obligation of the limited liability company, La. R.S. 12:1320 establishes specifically described exceptions to the general rule of limited liability

---

[84] 130 So.3d 888, 895.
[85] Ogea at p. 6 citing *See, e.g.,* Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C., 11–2254, p. 6 (La.App. 1 Cir. 7/10/12), 97 So.3d 595, 598

13

based on the existence of fraud, breach of professional duty, or other negligent or wrongful act. Thus, for purposes of this case, Plaintiffs argue they may recover personally against O'Brien and Jackson because the cause of action against them arises from fraud or "any breach of professional duty."[86] The parties disagree over whether this exception applies in this case to O'Brien and Jackson, insurance agents and producers.

The *Ogea* court did not specifically address the exception's application to individuals in the field of insurance, and Plaintiffs note that "since *Ogea*, there are no opinions analyzing whether an insurance agent/producer . . . can be held personally liable under the professional duty exception."[87] Plaintiffs contend *Ogea*'s list of professions, including "doctors, lawyers, and accountants," was only an "*illustrative* list of professions subject to the professional duty exception," and the exception may similarly apply to insurance professionals.[88]

On the other hand, Amwins agues "the duty of an insurance agent as recognized by the Louisiana Supreme Court is significantly different than that of the kinds of professions identified by" the *Ogea* court, which "made clear the term 'professional' has a 'clearly defined technical meaning within the law of business entities.'"[89] Amwins notes that Louisiana law recognizes professional corporations "for the dental, accounting, chiropractic, nursing, architectural, optometry, psychology, veterinary medicine, and architectural-engineering professions," and "[n]o such professional corporate entity exists for insurance agents."[90] Further, Amwins argues, "the duty of an insurance

---

[86] *See* La. R.S.12:1320(D).
[87] R. Doc. 17-1 at p. 11.
[88] *Id.* at pp. 11–12 (emphasis added).
[89] R. Doc. 24 at p. 13 (citing *Ogea* at 898).
[90] *Id.* at p. 3 (citing Ogea at 898-99).

14

agent . . . is significantly different than that of the kinds of professions identified"[91] in *Ogea*. Accordingly, they argue, the exception should not apply.

At this stage, however, it is Amwins' burden to show that the exception *does not apply* and not simply to argue that it does not. Amwins' heavy burden to show there is no possibility of recovery against O'Brien and Jackson requires that it eliminate all possibility that Plaintiffs may recover under the professional liability exception. In sum, Amwins argues the exception does not apply because insurance professions were not discussed in the *Ogea* decision; Plaintiffs argue the exception *may* apply to insurance professionals for the same reasons expressed in *Ogea*. As this Court finds the exception's application to insurance professionals is an open question of Louisiana state law, Amwins has not met its heavy burden of showing the Plaintiffs have no possibility of recovery.

As explained above, the Court will consider the standard used when evaluating a Rule 12(b)(6) motion for failure to state a claim and construe factual allegations, resolve contested factual issues, and resolve ambiguities in controlling state law in favor of remand. As a result, the Court finds there is a possibility of recovery against O'Brien and Jackson personally for obligations for which the LLC would otherwise be solely liable because they breached their professional duty.

### *Plaintiffs have a possibility of recovery on their direct claims against O'Brien and Jackson for failure to provide desired coverage, breach of fiduciary duty, and fraud.*

Plaintiffs bring a claim for failure to procure insurance directly against O'Brien and Jackson.[92] Ordinarily, an insurance agent's failure to procure desired coverage for a client is actionable only under limited conditions in Louisiana.[93] "[T]he plaintiff must establish:

---

[91] R. Doc. 24 at p. 3.
[92] R. Doc. 1-1 at p. 17.
[93] *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 730-31 (La. 1973).

'(1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence to obtain insurance and to notify the client promptly of the absence of coverage; and (3) actions by the agent which warranted the client's assumption that he was insured in the amount of the desired coverage."[94] Taking the facts alleged by Plaintiffs as true, O'Brien's "undertaking . . . to procure insurance" was "an agreement . . . to provide coverage" but O'Brien and Jackson failed to procure named storm coverage.

Plaintiffs also brings a claim against O'Brien and Jackson for breach of their fiduciary duty and fraud.[95] Louisiana courts recognize that an insurance agent may have a broader duty under certain circumstances. "An insurance agent's duty can be greater than merely procuring the insurance requested, depending on what services the agent holds himself out as performing and the nature of the specific relationship and agreements between the agent and his client."[96] If the insurance agent becomes more than a "mere order taker' for the insured," then the agent may have fiduciary duties to "advis[e] the client with regard to recommended coverage, investigat[e] and ascertain[] the financial condition of prospective companies, and notify[] the insured of policy cancellations or terminations."[97] "Where an agent is familiar with the insured's business, has reason to know the risks against which an insured wants protection, and has experience with the types of coverage available in a particular market, we must construe an undertaking to procure insurance as an agreement by the agent to provide coverage."[98]

---

[94] *Prest v. La. Citizens Prop. Ins. Corp.*, 125 So.3d 1079, 1086 (La. 2012) (quoting *Taylor v. Sider*, 765 So.2d 416, 418 (La.App. 4 Cir. May 31, 2000), *writ denied* (La. Oct. 6, 2000)).
[95] R. Doc. 1-1 at p. 17.
[96] *Belmont Commons, LLC v. Axis Surplus Ins. Co.*, 569 F.Supp.2d 637, 644 (E.D. La. July 28, 2008).
[97] *Offshore Prod. Contractors, Inv. V. Rep. Underwriters Ins. Co.*, 910 F.2d 224, 230 (5th Cir. 1990).
[98] *Id.*

16

Plaintiffs have pleaded enough to show a possibility of recovery against O'Brien and Jackson for breach of fiduciary duty in light of these duties.[99] An agent is exposed to "personal liability" when he breaches his "fiduciary duty to an insured to use reasonable diligence in procuring requested insurance coverage for the client's risks of which the agent is aware."[100]

Accepting Plaintiffs' facts as true, O'Brien knew of the risks to the properties—hurricanes, or named storms—but did not procure the requested named storm coverage for the entire year. The relationship O'Brien had with Plaintiffs, based on his experience with them and the New Orleans restaurant industry, may have imposed an even higher duty beyond that of a "mere order taker."[101] After a twenty-year relationship, O'Brien was "familiar with the [Plaintiffs'] business," knew "the risks against which [they] want[ed] protection, and had "experience with the kind of coverage available to" commercial food and beverage entities in Louisiana, who, like all Gulf Coast businesses, must guard against the regular and severe risk of hurricane damage.

Further, Plaintiffs raise a colorable argument that O'Brien and Jackson committed the kind of "post-malpractice" coverup that may constitute fraud under Louisiana law.[102] Civil Code Article 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."[103] As Plaintiffs report it, broadly, O'Brien (1) told them

---

[99] As Plaintiffs note, "Defendants did not try to rebut Plaintiffs[] argument that [O'Brien] can be held 'personally liable for damages occasioned by [his] intentional or negligent misrepresentations as to facts which he knows or has reason to know are false." R. Doc. 26 at p. 3 (citing R. Doc. 17-1 at p. 14). Indeed, "Defendants cannot meet their heavy burden if they do not address Plaintiffs['] arguments in favor of remand." *Id.*

[100] *Galjour v. Cutitto*, 2007 WL 1890625, at *2 (E.D. La. June 29, 2007)

[101] *Offshore Prod. Contractors, Inv. V. Rep. Underwriters Ins. Co.*, 910 F.2d 224, 230 (5th Cir. 1990).

[102] R. Doc. 26 at p. 5; *see also Lomont v. Bennett*, 2014-2483, p. 11 (La. 6/30/15); 172 So.3d 620, 628 (reasoning, in the legal malpractice context, that it would be "absurd to interpret" a statute defining fraud "to exclude fraudulent *concealment of* the malpractice" (emphasis added)).

[103] La. C.C. art. 1953

17

he had secured named storm coverage, (2) failed to do so, (3) assured Plaintiffs named storm coverage would be available, (4) encouraged them to hire contractors and other vendors to begin repairs, and then (5) refused to obtain documentation from StarStone that named storm coverage was in effect. Plaintiffs say they "did not learn of this "deception until meeting with their counsel."[104] That is, Plaintiffs allege O'Brien's repeated assurances over the two years following Hurricane Ida may have been an effort to prevent Plaintiffs from discovering the extent and consequences of his mistakes. Toward the end of the timeline, O'Brien and Jackson contacted Plaintiffs jointly to reiterate that StarStone was not arguing named storms were excluded.[105] As Plaintiffs allege, rather than accept accountability for their failure to procure named storm coverage, O'Brien and Jackson committed fraud as the Civil Code defines it: "misrepresentations [and] suppression of the truth made with the intention . . . to obtain an unjust advantage," that is, for their benefit at the expense of Plaintiffs.[106] Because an issue of improper joinder has been raised, the district court must construe factual allegations and resolve contested factual issues in the plaintiff's favor. The Court will consider the standard used when evaluating a Rule 12(b)(6) motion for failure to state a claim and construe factual allegations, resolve contested factual issues, and resolve ambiguities in controlling state law in favor of remand. There is a possibility the Plaintiffs may recover against the non-diverse Defendants on these claims. The non-diverse Defendants have not been improperly joined.

---

[104] R. Doc. 26 at p. 8.
[105] R, Doc. 1-1 at p. 13.
[106] La. C.C. art. 1953.

### *It is possible the Plaintiffs' claims are not perempted.*

Amwins, AJG, O'Brien, and Jackson argue that, even if Plaintiffs have a possibility of recovery against the non-diverse Defendants, those claims are perempted under state law on the face of the state court petition. La. Rev. Stat. § 9:5606, titled "Actions for Professional Insurance Agent Liability" provides in pertinent:

> A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
>
> * * *
>
> C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
>
> D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

The date Plaintiffs discovered or should have discovered that O'Brien and Jackson failed to procure the named storm coverage is not apparent on the face of the state court petition. Furthermore, the Plaintiffs allege the non-diverse Defendants committed fraud. The Court does not have the summary judgment evidence that would be necessary for the Court to pierce the pleadings, consider the motion as being similar to a motion for summary judgment, and decide these factual disputes. Instead, the Court will consider the standard used when evaluating a Rule 12(b)(6) motion for failure to state a claim and construe factual allegations, resolve contested factual issues, and resolve ambiguities in controlling state law in favor of remand. Assuming the Plaintiffs' allegations are true, the

non-diverse Defendants committed fraud as defined in Civil Code Article 1953 and the peremptive period in La. R.S. 9:5606 does not apply. It is possible the Plaintiffs may recover against O'Brien and Jackson.

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Plaintiffs' Motion to Remand is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to Civil District Court for the Parish of Orleans.

**New Orleans, Louisiana, this 14th day of March, 2024.**

						    _____
						          **SUSIE MORGAN**
					         **UNITED STATES DISTRICT JUDGE**